UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

GARY LABARBERA and FRANK FINKEL, as Trustees
of Local 282 International Brotherhood of Teamsters Welfare,
Pension, Annuity, Job Training and Vacation Sick Leave
Funds,

        Plaintiffs,                              **REPORT AND**
                                                                    **RECOMMENDATION**
    -against-                                  06-CV-6243 (NG) (JMA)

ANDREW'S TRUCKING CORP. d/b/a ANDREWS
TRUCKING CORP.,

        Defendants.

-----------------------------------------------------------------------------X

A P P E A R A N C E S:

Avram H. Schreiber, Esq.
40 Exchange Place, Suite 1300
New York, New York 10005
*Attorney for Plaintiffs*

**AZRACK**, **United States Magistrate Judge:**

By order dated January 17, 2007, the above-captioned action was referred to me by the Honorable Nina Gershon for a report and recommendation on plaintiffs' application for damages, attorneys' fees and costs, and a permanent injunction against defendant Andrew's Trucking Corp. d/b/a Andrews Trucking Corp. ("Andrew's Trucking" or "defendant"). For the reasons set forth below, I respectfully recommend a judgment of $698,899.00 be entered against defendant. This award reflects $693,307.49 in unpaid contributions, interest, and liquidated damages, plus $5591.51 in attorneys' fees and costs.

1

I. BACKGROUND

This action is brought pursuant to §§ 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132 and 1145 ("ERISA"), and § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185 ("Taft-Hartley Act"). Plaintiffs allege that defendant violated ERISA and the Taft-Hartley Act by failing to make requisite benefit contributions to the Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation Sick Leave Funds (the "Funds"). Plaintiffs are the trustees and fiduciaries of these Funds. (Dkt. No. 1: Compl. ¶ 3; Dkt. No. 5: Aff. in Supp. of Default J. ("Schreiber Aff.") ¶ 7.) The Funds are jointly administered, multi-employer benefit trusts within the meaning of ERISA. (Compl. ¶ 2.) They provide fringe benefits to employees performing services within the trade and geographical jurisdiction of the Local 282 of the International Brotherhood of Teamsters (the "Union"). (Id. ¶ 4.)

Defendant is a corporation that maintains its principal place of business in New York. (Compl. ¶ 6.) From July 1, 2002 through June 30, 2006, defendant was bound to a collective bargaining agreement (the "CBA") with the Union by which defendant was required to pay contributions to the Funds. (Id. ¶ 8; Schreiber Aff. Ex. B.) Section 13(G) of the CBA states that defendant is also bound by the provisions in the Restated Agreement and Declaration of Trust ("Trust Agreement"). (Schreiber Aff. ¶ 13, Exs. B and G.) In 2006, the parties entered into a Memorandum of Agreement effective July 1, 2006, which extended the CBA to 2009, subject to changes therein.[1] (Id. ¶ 12.) Pursuant to the terms of the CBA and its amendments and incorporated

---

[1] The Memorandum of Agreement was executed by an authorized representative of the Metropolitan Trucker's Association on behalf of all its member-employers. (Schreiber Aff. ¶ 12, Ex. C.) Defendant is a member of that association. (Schreiber Aff. ¶ 12, Ex. D.)

provisions, defendant is required to pay fringe benefit contributions to the Funds for all work performed by its employees who are covered by the CBA. (Id.)

Pursuant to section 14(A) of the CBA, defendant is required to either post a surety bond or pay all benefits on a weekly basis. (Schreiber Aff. ¶ 11, Ex. B.) Defendant does not have a surety bond in effect and thus is required to submit remittance reports and payments to plaintiffs each week. (Id.) Pursuant to Article IX, section 1(b) and section 3 of the Trust Agreement, a contribution will be deemed timely if it is made promptly by the employer on the due date established in the CBA. (Id. ¶ 15, Ex. G.) Any employer in default for five (5) working days thereafter shall be obligated to pay interest, together with attorneys' fees, auditor's fees and liquidated damages. (Id. ¶ 15, Ex. G.) Despite demands for payment, defendant is in default for unpaid contributions and related delinquency fees. (Compl. ¶ 10.)

On November 21, 2006, plaintiffs filed the instant action seeking unpaid contributions, interest on the unpaid contributions, liquidated damages, attorneys' fees and costs, and a permanent injunction. In light of defendant's failure to appear in or otherwise defend this action, plaintiffs moved for default judgment on January 5, 2007. (Dkt. No. 5: Mot. for Default J.) On January 9, 2007, the Clerk of Court noted the default pursuant to Fed. R. Civ. P. 55(a). (Dkt. No. 7: Clerk's Entry of Default.) Pursuant to Fed. R. Civ. P. 55(b)(2), Judge Gershon granted judgment by default to plaintiffs on January 17, 2007, and referred the matter to me for a report and recommendation concerning the relief requested. (Dkt. No. 8: Order.)

## II. DISCUSSION

**A.    Liability**

Defendant's default amounts to an admission of liability and all of the well-pleaded allegations in plaintiffs' complaint pertaining to liability are deemed true. See Credit Lyonnais Sec.,

Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The allegations in plaintiffs' complaint establish the elements of liability required to state a claim under § 1145 of ERISA. Section 1145 states: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Plaintiffs allege that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the Funds and that defendant failed to make such contributions. (Compl. ¶¶ 8-10.)

**B. Damages**

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. See Credit Lyonnais, 183 F.3d at 155; Au Bon Pain Corp., 653 F.2d at 65. Rather, a court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). In conducting such an inquiry, Fed. R. Civ. P. 55(b)(2) provides: if "it is necessary to take an account or determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper . . . ." The Second Circuit has held that "it [is] not necessary for the [court] to hold a hearing, as long as it ensured that there was a basis for the damages specified . . . ." Transatlantic Marine, 109 F.3d at 111 (quoting Fustok v. ContiCommodity Serv. Inc., 873 F.2d 38, 40 (2d Cir. 1989)). Here, plaintiffs have filed detailed affirmations and exhibits pertaining to the damages incurred and I consider these to be sufficient evidence to form the basis for an award of damages.

**1. Damages Available Under ERISA**

ERISA allows plan fiduciaries to bring civil actions to enforce the provisions of the CBA and obtain equitable relief. 29 U.S.C. § 1132(a)(3)(B)(ii); see also 29 U.S.C. § 1132(d)(1). Section 1145 makes clear that a plan member's contractual duty to make contributions to multiple employer plans is a statutory requirement, and violations of § 1145 are enforceable through civil actions brought under § 1132(g). New York State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc., 382 F.3d 272, 278 (2d Cir. 2004).

Since plaintiffs have established liability under § 1145, they are entitled to an award of: (1) the amount of unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorneys' fees and costs; and (5) such other legal and equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2).

**2.     Calculation of Damages**

**a.     Unpaid Contributions**

Defendant, by its default, has admitted that it failed to properly report and remit contributions on behalf of employees covered by the CBA. Plaintiffs seek unpaid contributions to the Funds in the amount of $550,974.39 for various weekly time periods between March 2005 and September 2006. (See Schreiber Aff. ¶ 53.) Specifically, plaintiffs set forth the amount of contributions owed for each period, the amounts paid, and the balance that remains due and owing.[2] (See Schreiber Aff. ¶¶ 16-50.) I have reviewed these calculations carefully and respectfully recommend granting plaintiffs damages in the amount requested, $550,974.39.

**2. Interest on the Unpaid Contributions**

---

[2] For weekly periods where defendant failed to submit remittance reports, the Trust Agreement provides that the sum due will be computed by adding ten (10) percent to the number of hours for the month in which the largest number of hours was reported in the previous twelve (12) reports submitted by that employer. (See Schreiber Aff. ¶ 28, Ex. G at 28.)

In their application, plaintiffs seek an award of interest that accrued for the period of delinquency, calculated from the date the contributions were due until January 5, 2007, in the amount of $26,332.55. (Schreiber Aff. ¶ 53.) Under 29 U.S.C. § 1132(g)(2), as well as the terms of the CBA, as amended, plaintiffs are entitled to an award of interest. (Id. ¶ 15, Ex. G.) ERISA provides that the "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under § 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Pursuant to an amendment to the Trust Agreement, adopted on October 29, 2003, the applicable interest rate is 18 percent per annum. (Id. ¶ 18, Ex. H.) Having reviewed plaintiffs' detailed calculations and supporting documentation, I respectfully recommend that plaintiffs be awarded $26,332.55 in interest.

**3. Liquidated Damages**

Section 1132(g)(2)(C) provides that, in addition to the unpaid contribution amount and the interest due, plaintiffs will be awarded "an amount equal to the greater of (i) interest paid on the unpaid contributions or (ii) liquidated damages provided for under the plan so long as it does not exceed twenty percent of the unpaid contributions." 29 U.S.C. § 1132(g)(2)(c). The terms of the Trust Agreement entitle plaintiffs to 20 percent of the unpaid principal. (Schreiber Aff. ¶ 18, Ex. G.) Having reviewed plaintiffs' detailed calculations and supporting documentation, I respectfully recommend that plaintiffs be awarded $116,000.55 in liquidated damages.[3]

**4. Attorneys' Fees and Costs**

In conjunction with an award for unpaid contributions, ERISA mandates an award for

---

[3] Although $116,000.55 appears to exceed the 20 percent limit set by 29 U.S.C. § 1132(g)(2)(C) ($116,00.55 is more than 20 percent of $550,974.39), such impropriety is not the case. There were weeks where defendant did not timely remit contributions, but did eventually pay the unpaid principal. (See Schreiber Aff. ¶¶ 19-26, 43.) Although the principal payments are no longer due and owing from defendants for such weeks, plaintiffs are still entitled to liquidated damages of 20 percent under the CBA. (Id. ¶ 15, Ex. G.)

reasonable attorneys' fees and costs. See 29 U.S.C. § 1132(g)(2)(D).

**a. Fees**

"The determination of a reasonable fee award under [§] 1132(g)(2)(D) of ERISA lies within the sound discretion of the [] judge." Bricklayers Ins. and Welfare Fund v. Rocky's Const., No. 06 CV 1156, 2007 WL 951859, *2 (E.D.N.Y. March 27, 2007) (citing Meehan v. Gristede's Supermarkets, Inc., No. 95 CV 2104, 1997 WL 1097751, at *5 (E.D.N.Y. Sept. 25, 1997) (internal quotations and citations omitted); Cruz v. Local Union No. 3 of Int'l Bd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994)). A party seeking such an award must support its application by submitting contemporaneous time records that detail "for each attorney, the date, hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

The Second Circuit has adopted the lodestar approach to calculating attorneys' fees. See Bourgal v. Lakewood Haulage Inc., 827 F. Supp. 126, 129 (E.D.N.Y. 1993) (citing Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989)). In computing these fees, a court multiplies the number of hours reasonably worked by what it deems a reasonable hourly rate. Bourgal, 827 F. Supp. at 129. Such awards are to be calculated in accordance with "the prevailing market rates in the relevant community." Chambless, 885 F.2d at 1058 (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). Thus, "[a court] must ascertain whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Chambless, 885 F.2d at 1058-59 (quoting Blum, 465 U.S. at 896 n. 11). Here, plaintiffs' counsel's affirmation indicates that three attorneys and one paralegal performed services in connection with this matter. (Schreiber Aff. ¶ 51, Ex. M.) Their rates are as follows: Avram H. Schreiber, a partner, charging $275.00 per hour; Christina Cruz and

Woomee Lee, associates, charging $200.00 per hour; and a paralegal, charging $70.00 per hour. (Id.) These rates are reasonable and appropriate. See, e.g., La Barbera v. D&R Materials, Inc., No. 06 CV 2100, 2007 WL 1041666, at *4 (E.D.N.Y. Apr. 3, 2007) (finding rate of $340.00 per hour reasonable in default ERISA case); King v. STL Consulting, LLC., No. 05 CV 2719, 2006 WL 3335115, at *7-8 (E.D.N.Y. Oct. 3, 2006) (awarding fees for Mr. Schreiber's time in a default ERISA case at the rate of $275.00 per hour); LaBarbera v. J.E.T. Res., Inc., 396 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2005) (awarding fees at the rate of $250 per hour for work done on a straightforward ERISA action); but see La Barbera v. Golden Vale Const. Group, No. 06 CV 813, 2007 WL 2071565, at *5 (E.D.N.Y. July 17, ,2007) (reducing rate of associate work to $140.00 per hour).

Plaintiffs request attorneys' fees of $5,114.50 for 30.4 hours of work. (Schreiber Aff., Ex. M.) Counsel's work on this case included drafting and editing the complaint, preparing affidavits of service, drafting correspondence, and preparing the default judgment submissions. (Id.) Largely because the calculation of damages in this case was not a simple task, I find the requested fees to be reasonable. Accordingly, I recommend an award of attorneys' fees of $5,114.50.

**b. Costs**

ERISA allows for the recoupment of costs. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs have provided documentation that their costs total $477.01. (See Schreiber Aff., Ex. M at 6-7.) The expenditures are for filing fees, service of process, and some postage and photocopying. I find the amount reasonable and respectfully recommend that plaintiffs be awarded $477.01 in costs.

**5. Permanent Injunction**

In addition to monetary damages, plaintiffs also seek a permanent injunction to ensure that defendant complies with the CBA, as amended, and the requirements of ERISA. (Compl. ¶ 26.) A permanent injunction is an appropriate remedy under § 1132(g)(2)(E) of ERISA, which states that in a successful action to enforce the requirements of ERISA, an ERISA plan may recover "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E).

However, the Second Circuit has cautioned that "injunctive relief does not follow automatically upon a finding of statutory violations . . . ." King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *8 (E.D.N.Y. Oct. 3, 2006) (citing Town of Huntington v. Marsh, 859 F.2d 1134, 1143 (2d Cir. 1988)). "Plaintiffs must also show irreparable harm and the absence of an adequate remedy at law in order to obtain a permanent injunction." Id. (citing Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 57 (1975); New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989)).

In the instant case, plaintiffs have not provided the Court with sufficient documentation to support their claim for injunctive relief. They have not have demonstrated that they will suffer irreparable harm should the injunction not be granted or that the remedy at law is inadequate. Accordingly, I respectfully recommend that plaintiffs' request for a permanent injunction be denied.

### III. CONCLUSION

For the above-mentioned reasons, I respectfully recommend that default judgment be permanently entered against defendant. Moreover, I recommend that a judgment of $698,899.00 be entered against defendant, reflecting $693,307.49 in unpaid contributions, interest, and liquidated damages, plus $5591.51 in attorneys' fees and costs. In addition, I respectfully recommend that plaintiffs' motion for a permanent injunction be denied. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within

ten (10) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

SO ORDERED.

Dated: August 6, 2007
       Brooklyn, New York

                                           /s/
                                     JOAN M. AZRACK
                                     UNITED STATES MAGISTRATE JUDGE

Copy also sent to:

Andrew's Trucking Corp.
d/b/a Andrews Trucking Corp.
38 South Drum Street
Staten Island, New York 10309